AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
District of Maryland

FILED ENTERED
LODGED RECEIVED

AUG 0 6 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. **14-1761 TJS** |
| | ) | |
| | ) | |
| GARY CLARK STECIUK | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 2008-July 2014__ in the county of __Carroll__ in the
_____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1028(A) | Aggravated Identity Theft |
| 18 U.S.C. Section 1341 | Mail Fraud |
| 18 U.S.C. Section 1344 | Bank Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Shayne Buchwald, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/06/2014__

_____
*Judge's signature*

City and state: __Baltimore, MD__   Timothy J. Sullivan, U.S. Magistrate Judge
*Printed name and title*



## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

## FOR GARY CLARK STECIUK

Your affiant, Shayne E. Buchwald, being first duly sworn, hereby depose and state as follows in support of a criminal complaint and arrest warrant for:

**GARY C. STECIUK**
DOB: \*\*/\*\*/1975
SSN: \*\*\*-\*\*-4935

### INTRODUCTION AND AGENT BACKGROUND

I, SHAYNE E. BUCHWALD, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately July 2002. I am currently assigned to the FBI field office in Baltimore, Maryland. I am a Special Agent with the Federal Bureau of Investigation "FBI", and have been since July 2002. I have participated in a vast array of criminal investigations to include drug violations, violent crime, interstate theft and misuse of public office. In part, I have been the affiant and case agent on wire and oral intercept affidavits, as well as Global Positioning, and search warrants. Those investigations have led to the recovery of evidentiary items to include illegal drugs, weapons, stolen property, financial property, and related items as well as indicia of those involved.

2. Currently, I investigate criminal violations relating to white collar crime, including mail, wire, and bank fraud, as well as aggravated identity theft. I have participated in numerous investigations of these offenses, the execution of related federal search warrants, and the arrests of individuals charged with such offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

1

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that GARY C. STECIUK has violated 18 U.S.C. Sections 1028 (A) (aggravated identity theft), 1341 (mail fraud), 1343 (wire fraud) and 1344 (bank fraud).

## STATEMENT OF PROBABLE CAUSE

### A. Aggravated Identity Theft, Mail, Wire and Bank Fraud

5. On July 21, 2014, David Kirkwood, contacted the Baltimore FBI office and complained that his financial advisor, GARY STECIUK, dba Capital Synergy Partners, stole over $600,000 from his investment accounts. Kirkwood resides in Middletown, Maryland. Kirkwood stated he had received nominal interest payments from STECIUK to make it appear as if his investment accounts were operating normally. Kirkwood's call to the FBI was prompted by a telephone call from his friend, Gary "Randy" Robbins during the weekend of July 19, 2014. Robbins informed Kirkwood that he had spoken to a bank investigator, Bryan Beaver, of BMO Harris Bank in Chicago, Illinois. STECIUK has bank accounts with BMO Harris Bank. Beaver informed Robbins that STECIUK had endorsed a $300,000 check made out to Robbins, then attempted to deposit the check into his account at BMO Harris Bank in Illinois. Robbins had not authorized this transaction. Kirkwood advised he received a telephone call on his answering machine from Beaver but had not yet returned the call.

6. On July 20, 2014, Kirkwood reviewed his accounts and found that six of his annuities accounts had been depleted and his IRA account was diminished. Kirkwood noticed that starting in approximately 2012, someone had periodically withdrawn fifteen to twenty

2

thousand dollars, without his knowledge or authorization. In addition, Kirkwood said that some of his accounts had been closed without his knowledge.

7. On July 21, 2014, Kirkwood spoke to Investigator Bryan Beaver, who informed Kirkwood that STECIUK deposited eight of Kirkwood's checks into STECIUK's BMO Harris Bank account. STECIUK deposited four checks from ING and four checks form Fidelity and Guaranty Life Insurance Company, for a total of $160,000. Each of the checks was made payable to Kirkwood, and listed his address as "P.O. Box 335, Hampstead, MD 21074-0335." Kirkwood advised he had no knowledge of that address. Kirkwood advised that each of these checks were issued without his knowledge and that STECIUK does not have power of attorney over his accounts. Investigator Beaver sent Kirkwood two of the checks STECIUK had deposited so the Kirkwood could review the endorsement signatures. Kirkwood stated that the signatures on the checks were not his and therefore forged.

8. On August 5, 2014, your affiant coordinated with Jeffrey Saltsman, the Postmaster of the Hampstead, Maryland U.S. Post Office. Saltsman informed your affiant that STECIUK opened P.O. Box 335 in 2002, and maintains the P.O. Box to this day. Saltsman further advised STECIUK gets regular mail delivered to 3903 Bixler Church Road, Westminster, Maryland.

9. Kirkwood stated he had used STECIUK as his financial advisor since 2005 when STECIUK was with GCS Financial. STECIUK later moved to Financial West and is now currently at Capital Synergy Partners. Kirkwood estimated that he has invested roughly $600,000 with STECIUK as his financial planner. STECIUK set up an account for Kirkwood where Kirkwood's principal would not be affected and where Kirkwood would receive accrued interest payments via direct deposit through his bank, Middletown Bank in Maryland.

STECIUK oversaw seven annuity accounts and a retirement account for Kirkwood. Kirkwood said that he had received checks on time from his annuity accounts and only recently noticed that he was not receiving them.

10. On July 31, 2014, your affiant showed Kirkwood copies of four checks from Fidelity & Guaranty Life Insurance Company made out to Kirkwood, with the address of P.O. Box 335, Hampstead, MD 21074 in the amounts of $3,600, $26,250, $29,550 and $21,866.96 respectively. Each check was for deposit in STECIUK's BMO Harris Bank bearing a signature of David Kirkwood. Kirkwood advised the address and the signature is forged. In addition, Kirkwood had no knowledge of the checks drawn on the account.

11. On July 31, 2014, ING Senior Investigator Bill Fountain reviewed several documents with Kirkwood, including applications for accounts and request for financial service documents. Kirkwood identified three documents, one for fixed annuities, one for deferred variable annuity and another for direct deposit authorization all bore Kirkwood's true signature. Kirkwood then reviewed the following documents that allegedly bore his signatures: USA Golden Select Variable Application dated April 22, 2008; USA Fixed Annuity Application, dated January 9, 2010; a Request for Financial Services to withdraw $20,000 dated October 20, 2013; a Request for Financial Services to withdraw $11,283 on November 15, 2013; a Request for Financial Services to withdraw $2,389 on November 19, 2013; a Request for Financial Services to withdraw $26,309 on December 3, 2013; and another Request for Financial Services to withdraw $22,307 on January 7, 2014. Kirkwood also reviewed four checks for $20,000, $11,283, $2,389 and $26,309 ; all of which bore Kirkwood's alleged signature. Kirkwood indicated that each of the above-mentioned signatures were forged. The checks from Kirkwood's ING accounts were deposited into STECIUK's BMO Harris Bank account.

4

12. On July 24, 2014, your affiant spoke with Investigator Bryan Beaver regarding another STECIUK transaction. Beaver advised on July 17, 2014, a banker out of BMO Harris's Northbrook office reviewed a $300,000 wire transfer request from STECIUK to a title company, General Land and Title Services, in Heber Springs, Arkansas. The banker noted that the $300,000 check was made out to Gary Robbins from Maryland. On July 18, 2014, a BMO analyst put a freeze on STECIUK's account and telephoned STECIUK about the $300,000 transaction. STECIUK advised the analyst that he and Robbins were business partners. Beaver telephoned Robbins, who advised that he and STECIUK are not business partners. In addition, Robbins indicated that he did not authorize STECIUK to write the $300,000 check from his account. Beaver asked Robbins to send a photocopy of his driver's license. Beaver then compared the Robbin's driver's license photographs with the photographs of the individual depositing the $300,000 check at an ATM in Mundelein, Illinois. Beaver reviewed a photograph dated 7/13/2014, of an individual depositing Robbin's $300,000 check, and determined that it was not Robbins. Your affiant compared STECIUK's DMV photo to the individual in the ATM photograph, and determined that it was STECIUK who deposited the $300,000 check into the ATM.

13. Investigator Beaver told your affiant that after BMO Harris analyst Wanda Zienhiewicz telephoned STECIUK and confronted him about the check made out to Robbins for $300,000, BMO Harris received a faxed "Affidavit of Endorsement" allegedly signed by Robbins. The document was notarized by Karen Giles of Clearburne County Clerk's Office in Arkansas.

14. On August 4, 2014, your affiant spoke to Karen Giles of the Clearburne County Clerk's Office. Giles advised she notarized an Affidavit of Endorsement on July 18, 2014 at

approximately 2:00 – 3:30 pm. A man of thin build, late 30's, with brown hair came into the office and showed her a driver's license with the name "Gary Robbins" on it. The license was out-of-state and appeared to be of the gentleman standing in front of her. Giles stated the man kept his head down and did not give her eye contact. Giles stated that she does not remember seeing that same gentleman before or after July 18, 2014. Your affiant reviewed STECIUK's driver's license photograph and of Robbins driver's license photograph, the men look nothing alike. Robbins is early 60's, heavy set and balding. STECIUK is late 30's, thin build and has a full head of brown hair.

15. On July 24, 2014, your affiant spoke to Gary "Randy" Robbins. Robbins also used STECIUK as his financial advisor. Robbins advised he received a telephone call from BMO Harris Bank investigator, Bryan Beaver. Investigator Beaver told Robbins that STECIUK attempted to deposit a $300,000 check made out to Robbins into STECIUK's BMO Harris Bank account. Robbins was told that STECIUK advised BMO Harris Bank employees that he and Robbins were business partners and that STECIUK had authority to transfer the money. Robbins informed Beaver that he and STECIUK were not business partners. According to Robbins, STECIUK has no power of attorney over Robbins' accounts. Robbins had no knowledge of the $300,000 check that STECIUK attempted to deposit into his account at BMO Harris Bank. Robbins was told by Beaver that in addition to the $300,000 check, a $50,320 check from ING and a $40,504 check from First American Bank both in Robbins name was deposited into STECIUK's account. Robbins indicated he had not authorized either of these checks.

16. On August 5, 2014, your affiant spoke to Robbins again, and questioned him regarding the "Affidavit of Endorsement" that had been sent to BMO Harris Bank. Robbins

indicated that he had not prepared the "Affidavit of Endorsement" and had no knowledge of this document.

17. On July 24, 2014, your affiant spoke to ING Senior Investigator Bill Fountain regarding STECIUK. Fountain advised STECIUK was an Agent for Capital Synergy Partners, and sold ING products. Fountain had received a telephone call from BMO Bank Investigator Bryan Beaver, informing him that STECIUK had deposited ING checks made out to: David Kirkwood, Kenneth Odea, Virginia Kerry, Lorraine Stair and Gary Robbins into STECIUK's account with BMO Harris Bank. Fountain advised STECIUK managed each of the aforementioned individual's pension funds and was responsible for the distribution of each client's checks. When reviewing the aforementioned client's records, Fountain found STECIUK changed the addresses on the accounts to PO Box 335, Hampstead, Maryland using a non-financial services form and apparently forged the signatures on these documents. The investigation further revealed that STECIUK changed Robbins' contact information on May 29, 2014 using his email account gary@gcsfin.com.

18. According to Investigator Fountain, STECIUK filled out a financial service request on June 15, 2014 to obtain money from Robbins' account. STECIUK attempted to withdraw $50,000 and $40,000 from Robbins' account using ACH transfer. STECIUK set up the ACH transaction with a forged authorization form and a voided starter check making it appear as if Robbins authorized the transaction. Investigator Fountain advised it is not ING policy to set up such a transaction with a starter check. According to Investigator Fountain, STECIUK faxed the forged authorization form, along with the starter check, to ING. STECIUK wrote Robbins name on the check, and listed PO Box 335, Hampstead, Maryland as Robbins'

address. STECIUK listed 410-374-5588 as Robbins' phone number. Public records indicate phone number 410-374-5588 is assigned to STECIUK.

19. Investigator Fountain further advised your affiant that on July 18, 2014, STECIUK attempted to execute a fraudulent request for financial service using Kenneth Odea's account. According to Investigator Fountain, STECIUK changed Odea's address to P.O. Box 335, Hampstead, Maryland. STECIUK listed 410-374-5588 as Odea's phone number. Public records indicate phone number 410-374-5588 is assigned to STECIUK. STECIUK attempted to have a check for $300,000 drawn on Odea's account, made payable to General Land and Title Company, with an address of 107 S. 3rd Street, Hever Springs, Arkansas. The reference on the check was "Acct: Mize". This transaction was not successful.

20. On July 25, 2014, your affiant spoke with David Hill, who advised that he was in the process of selling his house to STECIUK and his girlfriend, Dusti Mize. The house for sale is located in Heber Springs, Arkansas. Hill advised that STECIUK and Mize took possession of his home at closing on July 18, 2014. STECIUK used General Land and Title Company to obtain a title for the house and settlement was for the cash price of $279,500. Hill learned that STECIUK could not get the funding for the house but Hill allowed STECIUK and Mize to occupy the house after STECIUK tendered a $5,000 check to go toward the cost. On July 25, 2014, Hill and Mize exchanged the following text message:

> Hill: 4:10 p.m. I drove by to see if I had a box on the front porch from Action Industrial Group …It would be kind of heavy… Have you seen it? Its full of bolts. And pool guy should be calling anyday about the light.

8

Mize: 4:13 p.m. First off...sorry about all of the trouble. Haven't received any packages. You do have some mail on the bar. I didn't the mailman send it back.

Hill: 4:16 p.m. It will sort out im sure..Im just in a bad pickle not have my money ya know. Can I come back up and get the mail.

Mize: 4:16 p.m. I know sure

Hill: 4:17 p.m. Ok Is Gary in town?

Mize: 4:17 p.m. I meant those in two separate texts sorry.

Hill: 4:17 p.m. Its alright

Mize: 4:17 p.m. Yes. He's talking to someone about a mortgage at the moment.

Hill: 4:18 p.m. Ok .... goid idea. Might be the best way to resolve this..

Mize: 4:19 p.m. I agree....im not sure if we're supposed to discuss this, but I have nothing to hide.

Hill: 4:20 p.m. Its fine for you to have disclosed that to me... No worries.

Mize: Ok

21. On July 29, 2014, your affiant interviewed Kenneth Odea. Odea advised that he received a telephone call from Investigator Bryan Beaver, who told him that on June 9, 2014, STECIUK deposited a check for $21,000 in Odea's name into STECIUK's BMO Harris Bank account. The check indicated that Odea's address was P.O. Box 335, Hampstead, Maryland. Odea reviewed the check for $21,000, and advised that the signature on the check is forged. Odea pointed out that his name is spelled incorrectly, and Odea does not have a P.O. Box 335, Hampstead Maryland address. In addition to the $21,000 forged check, Beaver informed Odea

9

that three additional checks in the amounts of $14,750, $15,694.63, and $22,145, all from Ameritas Life Insurance Corp., were made out to Odea and deposited into STECIUK's BMO Harris Bank account. Odea advised he had no knowledge of these checks drawn on his account and did not give STECIUK authority to make these withdrawals. Odea stated that he has been using STECIUK as his financial advisor since 2005, and that all of Odea's investments were made with STECIUK's recommendations. Odea advised that STECIUK does not have power of attorney over any of his accounts.

22. On July 29, 2014 Investigator Bill Fountain reviewed ING's USA deferred variable annuity application with Odea, and Odea identified his true signature. Investigator Fountain then asked Odea to review a request for financial service document to withdraw $300,000. Odea indicated that he did not make this request, and signed a forgery affidavit for ING stating that he did not make this request, had no knowledge of the request, or knowledge of the PO Box 335 Hampstead Maryland address on the request. Furthermore, Odea advised that he did not go to Heber Springs, Arkansas and attempt to have money wired to an account in the name of Mize.

23. On July 29, 2014, your affiant interviewed Virginia Kerry, who advised that STECIUK had been her financial planner in 2005. Kerry has had no contact with STECIUK since 2012. Kerry informed that a year ago she was contacted by Great American Bank investigator, Tony McDaniel, who advised STECIUK was wiring money out of Kerry's account. Kerry told McDaniel that STECIUK did not have permission to move her money.

24. In April 2012, Kerry received a telephone call from Lincoln Financial Group ("LFG"). The LFG representative advised Kerry not to close her LFG account as it would result in a $10,000 loss to her. Kerry stated she did not intend to close her account and had no

10

knowledge of the requested transaction. LFG sent Kerry the account closure request for her review, and Kerry stated that her signature on the document was forged. In April 2012, STECIUK contacted Kerry via email and attached a letter informing her he was moving to a new company. STECIUK sent Kerry a letter in the mail with a document for her to sign that would allow STECIUK to take her accounts with him to his new company. Kerry told STECIUK that she would not sign the documents because she would like to discuss her accounts in person with him. STECIUK never met with Kerry to discuss her accounts, so Kerry never gave him authority to take her accounts with him. Kerry advised that STECIUK had no power of attorney over her accounts.

25. On July 29, 2014, ING Senior Investigator Bill Fountain showed Kerry a document for deferred variable annuity for ING that Kerry identified as having knowledge of and bore her true signature. Kerry was shown a request for non-financial services form dated October 6, 2008 to change her address to a P.O. Box 335 in Hampstead, Maryland. Kerry advised she had no knowledge of that address, did not request a change of address, and that her signature was forged on the document. Kerry was shown a document dated October 16, 2013, which was for a full contract surrender of $14,000 on her ING account. Kerry reviewed the document and advised it was not her request and her signature was forged. Lastly, Kerry was shown a check issued to her for $15,497 that was deposited into STECIUK's BMO Harris Bank account. Kerry advised that the signature on the check is forged, she has no knowledge of the P.O. Box 335 Hampstead, Maryland address on the check and had no knowledge of the check drawn on her account.

26. On July 30, 2014, your affiant met with Lorraine Stair who advised STECIUK has been her financial advisor since 1997. Stair has two accounts with STECIUK, one of which

was ING. Stair believed her accounts were worth approximately $200,000. STECIUK never had power of attorney over Stair's finances. Stair has not spoken to STECIUK in over a year and a half.

27. On July 30, 2014, Investigator Bill Fountain showed Stair an ING fixed annuity document that Stair identified as bearing her true signature. Stair was then shown a request for non-financial service form dated April 22, 2009 to change her address to P.O. Box 335 Hampstead, Maryland. Stair advised that she does not know that address, and did not request the address change. She further indicated that the signature on the document is forged. Stair was shown a request for financial service dated April 20, 2014 to withdraw $41,200. Stair advised she did not make the request and the signature on the document is forged. Stair was shown a check bearing her name with the P.O. Box 335 address on it for $41,200 for deposit in to STECIUK's BMO Harris Bank account. Stair had no knowledge of this transaction, did not give STECIUK authority to take the money and advised the signature on the check is forged.

28. On July 30, 2014, your affiant spoke with Colleen Goodman, who advised STECIUK was her financial planner since April 2004. Goodman made real estate investments through Steciuk, and also had two bonds that STECIUK set up for her so that she could live off of the interest. Both bonds were due to mature last year but Goodman has not received any funds from the bonds. In addition to the bonds, Goodman had investments with Cornerstone Properties and with GMAC. Goodman advised she invested a lot of money into the GMAC account and recently learned that she only had $13,000 left. In April 2013, Goodman spoke with American Financial Group investigator, Tony McDaniel, about STECIUK sometime last year and told him that STECIUK moved her annuity without her permission.

29. On August 1, 2014 your affiant reviewed four ATM photographs of an individual making deposits into STECIUK's BMO Harris Bank. The most recent photograph occurred on July 13, 2014, where STECIUK is making a $300,000 check deposit into STECIUK's personal BMO Harris Bank account with Robbins forged check. Your affiant determined that in each of the ATM photographs, STECIUK was the individual making the ATM deposits.

30. On August 1, 2014, your affiant spoke with JoAnn Mileo, who advised that she met STECIUK in 1992 via his now wife, Vicki Steciuk. STECIUK set up funds for her and her mother, Sherry Schindler. Mileo advised that her mother invested over $100,000 with STECIUK, through Great American Financail Group. Mileo stated she called Great American Financial Group with concerns about STECIUK. Mileo stated she was told that STECIUK was interviewed by Great American Financial Group, and STECIUK admitted to signing Mileo's and Schindler's names on documents without their knowledge or consent. Mileo advised that she and her mother, who has dementia, never gave STECIUK power of attorney over any of their accounts. After the Great American Financial Group incident, they took STECIUK's name off of all of their accounts.

31. On August 1, 2014, your affiant spoke to Great American Financial Group Investigator, Tony McDaniel, who advised STECIUK was appointed with Great American Insurance ("GAI") from October 2010 to July 23, 2013. On July 18, 2013, McDaniel interviewed Appointed Agent Gary STECIUK who confessed to forging annuitant's signatures on policies. STECIUK admitted to McDaniel he forged the name of JoAnn Mileo on the application for GAI annuity, dated March 10, 2011, and transferred approximately $46,000 of Mileo's funds from Sunlife to GAI without her knowledge. STECIUK also admitted to forging the name of Sherry Schindler, Mileo's mother, on a Fidelity and Guaranty Life annuity

13

application to GAI. STECIUK also admitted to forging the name of Stephen Johnson on the application for GAI annuity dated November 1, 2012, and transferred funds of $70,000 without Johnson's knowledge or consent. In addition to Mileo, Schindler, and Johnson, STECIUK admitted to McDaniel that he also forged the signature of Nancy Row.

## REQUEST FOR AN ARREST WARRANT

32. Based upon the above information, the affiant requests that an arrest warrant be issued for the individual identified as GARY C. STECIUK, for violations of 18 U.S.C. §1028(A) (aggravated identity theft), 18 U.S.C. §1344 (bank fraud), 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud) because from in or about March 10, 2011, to the present, in the District of Maryland and elsewhere, STECIUK has attempted to engage in and has engaged in a scheme to defraud a financial institution utilizing various facilities of interstate commerce, including the internet, the telephone, electronic mail, and U.S. mail to attempt to engage in a scheme, and to engage in a scheme to defraud or to obtain money from a federally-insured financial institution by means of false or fraudulent pretenses, representations, or promises. In addition, STECIUK knowingly transferred, possessed and used, without lawful authority, the means of identification of victims during and in relation to the commission of bank fraud and attempted bank fraud, a specific relevant felony enumerated in 18 U.S.C. §1028A(c)(5).

## REQUEST FOR SEALING

33. Because this matter related to an ongoing criminal investigation involving an individual not currently in custody, your affiant respectfully requests that this affidavit, the criminal complaint, and the arrest warrant be filed under seal until after the arrest of STECIUK. Upon arrest, the United States Attorney's Office will move to unseal the affidavit, complaint, and warrant.

**14-1761 TJS**

I declare, after being duly sworn, that the foregoing is true and correct to the best of my knowledge.

*Shayne E. Buchwald*
Shayne E. Buchwald
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on the 6th day of August, 2014

TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

15